No. 3839.—BABCOCK & KERNOCHAN *v.* A. C. WATSON.

A defendant who alleges that the consideration of the obligation on which suit is brought grew out of an illicit transaction between himself and the plaintiffs in order to succeed in his defense, must support his allegations by clear and undisputed evidence. The doctrine in the case of Weaver *v.* Anfoux, 20 An. 1, is reaffirmed by this decision.

APPEAL from the Thirteenth Judicial District Court, parish of Tensas. *Hough,* J. *Julius Aroni,* for plaintiffs and appellees. *Farrar & Reeves,* for defendant and appellant.

This case was tried by a jury in the court below.

HOWE, J. This suit was instituted upon a promissory note given by defendant in 1866, in settlement of an account of plantation goods sold to him by plaintiffs in 1861.

His principal defense is that these goods were knowingly and unlawfully furnished to him by the plaintiffs for the equipment of a rebel battery, organized by defendant, and known as Watson's Battery. In brief he avers that the plaintiffs were co-conspirators with him against the Government of the United States and he invokes their common turpitude as a defense.

The cause was tried by a jury, who rendered a verdict for plaintiffs, and from the judgment entered thereon the defendant has appealed.

The jury doubtless believed that the defendant did not make out his case with that clearness which such a suspicious sort of defense requires (20 An. 1), and we are not prepared to say they were mis-

Babcock & Kernochan v. Watson.

taken. The defendant had the benefit of his own testimony before the jury (while the plaintiffs were represented only by a written deposition of one of them); and he began his testimony with the rather damaging admission that he would not swear that the account presented was the one on which the note was based. He confesses that the dozen linen cambric handkerchiefs and the dozen half cotton hose, set forth in the account, were probably not for the use of his cannoneers, and it is likely the same might be said of " six pieces of brown cotton," also mentioned in the bill. He fails to account for the fact that about half the goods were purchased by him in January and February, 1861, two months before the war began, while his battery was not organized till nearly four months after the war broke out, or in August, 1861. He fails entirely to show any knowledge, on the part of plaintiffs, of the destination of the goods. He says:

" I represented to Mr. Deery, their clerk, who conferred with the members of the firm (whom I don't think I ever knew) that the articles purchased as enumerated were for army use, and the house thereupon made a reduction in the price.   *   *   When I gave the note I stated to the party to whom I gave it, that the goods purchased had been for army use, and that he ought to make a reduction in the price."

If this testimony refers in the first instance to the time the goods were purchased, it is contradicted by testimony on behalf of plaintiffs, which shows that the goods were charged at full prices, and by testimony for defendant, which shows that they were purchased not by defendant personally but, in his absence from New Orleans, by his factor, now deceased, at the request of his sister-in-law, who had no personal interview with either Deery or plaintiffs about them, and states that she can not say the plaintiffs were aware of their destination. And furthermore, if the plaintiffs made this reduction in 1861, when the goods were purchased, why did the defendant when he gave the note in 1866, ask for a reduction for the same reason ? But if the testimony above quoted refers throughout, as seems most natural, to what took place in 1866, when it seems a reduction was made by throwing off some arrears of interest, it can not prejudice the plaintiffs' right growing out of a sale in 1861.

The testimony for plaintiffs goes to disprove any knowledge of the destination of the goods, and this seems credible enough. Why should dry goods merchants supplying plantation goods to the factor of a planter, suspect that he was about to beat his plowshare into a sword, and use such innocent and bucolic materials as " stripes," "jeans" and "linseys," to equip a company of artillerymen ?

Judgment affirmed.